IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| IN RE MUTUAL FUNDS INVESTMENT LITIGATION | MDL 1586 |
| Putnam Subtrack | MDL Case No. 04-md-15863 (Judge J. Frederick Motz) |
| *Shahi v. Putnam Investments* | Case No. JFM-04-2605 |

\*\*\*\*\*\*

## MEMORANDUM

Plaintiffs Kaveh Shahi and Leslie Shahi filed this action against defendant Putnam Investments in the Vermont Superior Court in January 2004. The complaint sought federal and state remedies for Putnam's alleged failure to disclose market timing in its mutual funds. Putnam immediately removed the case to federal court. In February 2004 the Judicial Panel on Multidistrict Litigation created MDL 1586, which encompassed all actions arising from late trading and market timing in the mutual funds industry, and transferred applicable cases to the District of Maryland for pretrial proceedings. More than a dozen mutual fund families were implicated in the market timing litigation, and this court created a separate subtrack for each mutual fund family, including one subtrack for all cases related to Putnam Investments and its affiliates. In August 2004 the Shahis' case was consolidated with MDL 1586 and, ultimately, with the other cases in the Putnam subtrack.

The plaintiffs in the Putnam subtrack asserted claims under the Securities Act of 1933, the Securities Exchange Act of 1934, the Investment Company Act, and the laws of various

1

states.  In an August 2005 opinion, I held that the plaintiffs had pled sufficient facts to support a claim against the mutual funds under section 10(b) of the Securities Exchange Act of 1934 and SEC Rule 10b–5, which was promulgated pursuant to that statute.  *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d 845, 853–65 (D. Md. 2005) (opinion in Janus subtrack); *see also Saunders v. Putnam Am. Gov't Income Fund*, No. 04-560, 2005 WL 4147187 (D. Md. Nov. 3, 2005) (applying that decision to Putnam subtrack).  I further held that the plaintiffs had asserted viable claims under section 36(b) of the Investment Company Act for "excessive fees and expenses resulting from the defendants' scheme." *Id.* at 868.  But I dismissed the claims under sections 34(b) and 36(a) of the Investment Company Act because I concluded that "the unambiguous language of Sections 34(b) and 36(a) makes clear that no private right of action exists under either statute." *Id.* at 870.  I also dismissed the claims under sections 11 and 12(a)(2) of the Securities Act of 1933 because "plaintiffs ha[d] not alleged facts demonstrating that they (or the other members of the putative class) ha[d] sold their shares (or could have sold their shares at the time suit was filed) for an amount less than they paid for the shares." *Id.* at 867.

After the parties engaged in protracted and voluminous discovery, I once again considered the plaintiffs' claims under the Securities Exchange Act of 1934 when the defendants moved for summary judgment in July 2008.  *See In re Mut. Funds Inv. Litig.*, 590 F. Supp. 2d 741 (D. Md. 2008).  With two limited caveats,[1] I concluded that the plaintiffs could not prove scienter—a necessary element of a Rule 10b–5 claim—because there was no evidence of the defendants' alleged intentional or reckless misconduct.  *Id.* at 749–58.  In reaching that

---

[1] The plaintiffs established that Putnam had the requisite scienter with respect to market timing by Putnam employees and market timing in DC/401k plans, but I nevertheless entered summary judgment in Putnam's favor because I found that the damages that accrued to the plaintiffs as a result of that market timing activity were fully offset by the restitution paid by the defendants pursuant to certain regulatory settlements.  *See In re Mut. Funds Inv. Litig.*, 608 F. Supp. 2d 677, 677–78 (D. Md. 2009).

conclusion, I noted that the plaintiffs had advanced three different theories of scienter throughout the course of the litigation. *Id.* at 749. The plaintiffs' first theory "was that they could prove defendants had acted intentionally by entering into express arranged market timing agreements with certain traders." *Id.* Ultimately, however, the plaintiffs identified no evidence of "a single arranged market timing agreement." *Id.* at 754. The plaintiffs next argued that the defendants had entered into "tacit market timing agreements" with certain traders or, at the least, had "willfully or recklessly turned a blind eye" to market timing trades by certain traders. *Id.* at 749. But the evidence demonstrated that the defendants had taken "extensive and comprehensive efforts to stop market timing once it was detected," and I therefore concluded that the plaintiffs could not establish that the defendants acted recklessly. *Id.* at 758.

Toward the end of the litigation, the plaintiffs added a third theory: "[E]ven if the mutual fund defendants did not expressly or tacitly enter into market timing agreements or did not intentionally or recklessly bury their heads in the sand about market timing transactions, defendants are nevertheless liable because they knew, but did not disclose, that despite the efforts they were making to control market-timed transactions, such trades were occurring and causing harm to long-term shareholders in the funds." *Id.* at 749. I did not entertain this argument on summary judgment. Although I noted that the theory might be "sound in principle," I found the plaintiffs' new theory to be untimely because it was advanced too late in the game and would "substantially change the focus of the litigation that has been pending several years." *Id.* at 750.

The plaintiffs appealed the adverse judgment to the Fourth Circuit. Before the appellate court could consider the appeal, however, the parties entered into a class action settlement agreement. This ended the litigation for most plaintiffs. The Shahis, however, elected to opt out of the class settlement in 2010. The Shahis nonetheless failed to take further action, and in July

3

2012 this court ordered the Shahis to show cause why their action should not be administratively closed. The Shahis subsequently asked the Judicial Panel on Multidistrict Litigation to issue an order remanding their case to the District of Vermont. Putnam opposed the motion, and in December 2012 the panel denied the motion. In the meantime the Shahis also sought a suggestion of remand from this court, and I denied the motion in January 2013. Five months later Putnam filed a motion to dismiss—the subject of today's opinion.

The gist of Putnam's motion is that the Shahis have not complied with Federal Rules of Civil Procedure 8(a) and 9(b). Putnam is correct, and although the deficiency in their pleading is perhaps attributable to the fact that the Shahis originally filed their complaint in state court, their allegations must be fleshed out. A mere three pages comprise the Shahis' four-count complaint. Count three, for example, alleges "violations of federal laws and regulations including but not limited to the Securities Exchange Act of 1934 and the rules and regulations thereunder." (Compl. ¶ 10.) This allegation is wholly insufficient to provide Putnam with adequate notice of the claims against which it must defend itself. The Shahis respond that, "after ten years of litigation," Putnam is "fully aware of the wrongdoings it committed that formed the basis for the lawsuits that followed." (Pl.'s Opp. at 3.) That argument is misguided for at least three reasons.

First, irrespective of the extent to which the allegations in two similar suits parallel one another, each plaintiff must adequately plead each claim because the two suits are neither coterminous nor mutually reliant. One plaintiff may assert different causes of action than the other even where the factual allegations underlying the two plaintiffs' claims are identical. Putnam now knows the claims asserted by the MDL plaintiffs, but the Shahis are not limited to those avenues of relief. The Shahis are entitled to pursue causes of action that the other plaintiffs did not, and equally may elect not to pursue claims on which the MDL plaintiffs failed to

2012 this court ordered the Shahis to show cause why their action should not be administratively closed. The Shahis subsequently asked the Judicial Panel on Multidistrict Litigation to issue an order remanding their case to the District of Vermont. Putnam opposed the motion, and in December 2012 the panel denied the motion. In the meantime the Shahis also sought a suggestion of remand from this court, and I denied the motion in January 2013. Five months later Putnam filed a motion to dismiss—the subject of today's opinion.

The gist of Putnam's motion is that the Shahis have not complied with Federal Rules of Civil Procedure 8(a) and 9(b). Putnam is correct, and although the deficiency in their pleading is perhaps attributable to the fact that the Shahis originally filed their complaint in state court, their allegations must be fleshed out. A mere three pages comprise the Shahis' four-count complaint. Count three, for example, alleges "violations of federal laws and regulations including but not limited to the Securities Exchange Act of 1934 and the rules and regulations thereunder." (Compl. ¶ 10.) This allegation is wholly insufficient to provide Putnam with adequate notice of the claims against which it must defend itself. The Shahis respond that, "after ten years of litigation," Putnam is "fully aware of the wrongdoings it committed that formed the basis for the lawsuits that followed." (Pl.'s Opp. at 3.) That argument is misguided for at least three reasons.

First, irrespective of the extent to which the allegations in two similar suits parallel one another, each plaintiff must adequately plead each claim because the two suits are neither coterminous nor mutually reliant. One plaintiff may assert different causes of action than the other even where the factual allegations underlying the two plaintiffs' claims are identical. Putnam now knows the claims asserted by the MDL plaintiffs, but the Shahis are not limited to those avenues of relief. The Shahis are entitled to pursue causes of action that the other plaintiffs did not, and equally may elect not to pursue claims on which the MDL plaintiffs failed to

recover. Putnam therefore is entitled to know what federal claims the Shahis assert so that it can defend itself against those claims.

Second, although the Shahis argue that Putnam "is fully aware of the wrongdoing it committed," this court found in favor of Putnam on each federal claim asserted by the MDL plaintiffs. The court found that, for the most part, the plaintiffs could not establish the requisite scienter. Insofar as the plaintiffs did establish wrongdoing under Rule 10b–5, the court concluded that the plaintiffs' damages had been fully offset by regulatory settlements. Thus, if the Shahis seek to assert viable claims under federal securities laws, they will need to allege facts and/or legal arguments beyond those alleged by the MDL plaintiffs.

Third, the litigation history in this MDL demonstrates the significance of adequate pleading. The MDL plaintiffs advanced three theories in attempted satisfaction of the element of scienter. I disposed of two of those theories on summary judgment, and I do not intend to revisit that decision if the Shahis' amended complaint echoes the allegations of the MDL plaintiffs. The third theory I refused to consider because the plaintiffs failed to allege the theory in their complaint and raised it much too late in the litigation. The importance of adequate pleading therefore should be apparent to the Shahis. If they do not plead their theories of recovery in the complaint, the court may not permit them to advance those theories later in the litigation.

The Shahis therefore will be afforded one opportunity to amend their complaint to identify the specific federal laws and regulations under which their claims against Putnam arise. The Shahis also must identify the specific basis on which they seek rescission. When amending their complaint, moreover, the Shahis must take care to plead all allegations of fraud with particularity. Claims under Rule 10b–5(a), (b), and (c) are subject to the heightened pleading requirements of Rule 9(b) and the Private Securities Litigation Reform Act. *See In re Royal*

5

*Ahold N.V. Sec. & ERISA Litig.*, 351 F. Supp. 2d 334, 372 (D. Md. 2004). The Shahis consequently must specify the representations on which they relied when purchasing the Putnam funds, who made those representations, when those representations were made, and "what effect the scheme had on the market for the securities at issue." *In re Mut. Funds Inv. Litig.*, 384 F. Supp. 2d at 855 (internal quotation marks omitted). The same is true of the Shahis' claim under section 4224a of the Vermont Securities Act, as that statutory language mirrors the language of Rule 10b–5 and is subject to the same heightened pleading requirements. And the Shahis should be aware that, even if their amended complaint states a viable claim under Rule 10b–5, they are unlikely to survive a motion for summary judgment on those claims unless their allegations differ from the allegations of the MDL plaintiffs. This court previously dismissed all claims under the Securities Act of 1933 and entered judgment in Putnam's favor on all claims under Rule 10b–5, and the Shahis appear likely to suffer the same fate.

The Shahis will not be given leave to amend count four, which seeks relief for violations of the Vermont Consumer Fraud Act, Vt. Stat. Ann. tit. 9, § 2453. That count will be dismissed. Section 2453(a) prohibits unfair methods of competition in commerce and unfair or deceptive acts or practices in commerce. This statute mirrors the language of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45, and directs courts to construe the statute in line with construction of the FTC Act. *See* Vt. Stat. Ann. tit. 9, § 2453(b). Federal courts have interpreted the FTC Act to preclude coverage of securities transactions, and state statutes that mirror the FTC Act similarly have been construed not to regulate such transactions. *See Lindner v. Durham Hosiery Mills, Inc.*, 761 F.2d 162, 166–68 (4th Cir. 1985); *see also Spinner Corp. v. Princeville Dev. Corp.*, 849 F.2d 388, 390–92 & n.4 (9th Cir. 1988). This court therefore must give effect to

the directive of the Vermont legislature and refuse the Shahis' invitation to extend the reach of the Vermont Consumer Fraud Act to securities transactions.

Accordingly, the Shahis will be granted leave to amend their complaint to replead counts one, two, and three with particularity. Count four will be dismissed. A separate order follows.

   August 26, 2013                                        /s/
Date                                                                  J. Frederick Motz
                                                                  United States District Judge